IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | Case Nos. | 1:16-cr-89 |
| | : | | 1:17-cr-38 |
| Plaintiff, | : | | |
| | : | Judge Susan J. Dlott | |
| v. | : | | |
| | : | **ORDER DENYING DEFENDANT'S** | |
| PHILLIP WATKINS, | : | **SECOND MOTION TO WITHDRAW** | |
| | : | **GUILTY PLEA** | |
| Defendant. | : | | |
| | : | | |

This matter is before the Court on Defendant's Second Motion to Withdraw His Guilty Plea (Doc. 134).[1] For the reasons set forth below, Watkins' motion will be **DENIED**.

I.  BACKGROUND

On August 21, 2016, police officers reported an overdose to Heroin Task Force Officers. (Doc. 1 at PageID 3.) The overdose victim ("CS16-11") was not breathing when s/he was found unresponsive in a vehicle but had become responsive after emergency medical personnel administered Narcan. (*Id.*) CS16-11 indicated s/he purchased heroin from a couple now known to be Watkins and his co-defendant. CS16-11 engaged in a series of controlled buys of heroin and carfentenil from the couple, and Watkins and his co-defendant were arrested. (*Id.* at PageID 3–11.) On September 21, 2016, a federal grand jury returned a seven-count indictment charging them with one count of conspiracy to possess with intent to distribute heroin and carfentanil resulting in serious bodily injury in violation of 21 U.S.C. § 846, five counts of distributing

---

[1] Case 1:16-cr-89 and Case 1:17-cr-38 are related actions. Watkins filed his Second Motion to Withdraw His Guilty Plea in both cases. (Doc. 134 in Case 1:16-cr-89 and Doc. 48 in Case 1:17-cr-38.) For simplicity and consistency, the Court will refer to document numbers and PageID numbers in Case 1:16-cr-89 unless otherwise specified.

1

heroin and carfentanil in violation of 21 U.S.C. § 841, and one count of operating a drug involved premises in violation of 21 U.S.C. § 856. (Doc. 16.)

On December 21, 2016, a federal grand jury returned an 11-count superseding indictment adding additional counts relating to the heroin and carfentanil trafficking and "resulting in death" allegations to the conspiracy count. (Doc. 32.) The Government later filed a second superseding indictment (Doc. 82) and a notice of intent to use Defendant's previous Hamilton County felony drug trafficking conviction for sentencing enhancement pursuant to 21 U.S.C. § 851. (Doc. 106.)

While Watkins was detained pending trial on the drug-related charges, officers intercepted letters Watkins sent through an intermediary disclosing the name, address, and personal details of a confidential witness whom Watkins believed planned to testify against him and urging recipients to burn or destroy the letters after reading them. (*See* Doc. 28 in Case 1:17-cr-38.) Once the letters were intercepted, the Government moved the witness to a safe location. Watkins was moved from general population to solitary confinement, and his co-defendant's attorney moved for a "No Contact" Order against Watkins. (Doc. 42.)

On March 15, 2017, a federal grand jury returned a three-count indictment charging Watkins with tampering with a witness with intent to murder the witness, tampering with a witness by corrupt persuasion, and use of interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 1958. This indictment is the basis of the related case, 1:17-cr-38. (Doc. 1 in Case 1:17-cr-38.)

After Watkins was indicted on the witness tampering and murder-for-hire charges, he requested new counsel, and the Court granted his request. (Doc. 65.) When Watkins' new counsel indicated that the volume of discovery was difficult for a sole practitioner to handle, the

Court appointed co-counsel from a large law firm with extensive experience in complicated criminal matters to assist him. (Doc. 74.)

On September 7, 2017, Watkins entered into a plea agreement. (Doc. 107.) By the terms of the plea agreement, Watkins would plead guilty to Count 1 in Case 1:16-cr-89 (conspiracy to possess and distribute a controlled substance resulting in serious bodily injury) and Count 1 in Case 1:17-cr-38 (tampering with a witness by attempting to kill). In exchange, the Government would dismiss the remaining counts in both cases and withdraw its Section 851 notice for sentencing enhancement based on a prior drug trafficking conviction. (*Id.* at PageID 331.) The plea agreement called for an agreed sentence of 240 to 300 months plus supervised release, a fine to be determined by the Court, and a $200 mandatory special assessment. (*Id.* at PageID 330.) Watkins signed the plea agreement shortly below the paragraph in which he acknowledges:

> [T]hat he has read and understands this plea agreement; that he accepts this plea agreement knowingly and voluntarily and not as a result of any force, threats, or promises, other than the promises in this plea agreement; that he has conferred with his attorney regarding this plea agreement . . . and that he is fully satisfied with [his attorneys'] representation, advice, and other assistance.

(*Id.* at PageID 332–33.)

The same day, Watkins appeared before this Court accompanied by both of his attorneys and entered a change of plea. (Doc. 115.) During the change of plea hearing, Watkins indicated that he believed his attorneys were fully informed about the facts and circumstances of his case, and he was fully satisfied with their representation and advice. (*Id.* at PageID 357.) The Court informed Watkins that the mandatory sentence on the drug conspiracy charge was 20 years to life, and Watkins stated that he understood. (*Id.*) In addition, the Court informed Watkins that

3

the maximum penalty for the witness tampering charge was 30 years, and he indicated that he understood. (*Id.* at PageID 358–59.)

During the entire Rule 11 colloquy, Watkins appeared lucid, competent and attentive. When the Court asked his attorneys if they had any reason to doubt his competence to change his plea, one of his attorneys responded, "Judge, in interaction with our client over the last two months, I've found him to be extremely lucid. He understands what's going on, and I have no doubt that he's competent." (*Id.* at PageID 356.)

The Assistant United States Attorney summarized the plea agreement in open Court, and Watkins and his Counsel all affirmed the plea agreement. (*Id.* at PageID 369–71.) Watkins then affirmed again that he was pleading guilty of his own free will and because he is in fact guilty. (*Id.* at PageID 370.)

A Task Force Officer read the allegations against Watkins in open court, including that Watkins and his co-defendant sold "Victim Two" controlled substances which resulted in Victim Two's drug overdose, loss of consciousness, and respiratory failure until revival by emergency medical personnel. The Officer further stated, "Watkins planned and attempted to murder Victim Two because Watkins believed Victim Two was going to testify against him in the narcotics case." (*Id.* at PageID 371–72.) The Court asked Watkins if what the Task Force Officer said was correct, and Watkins answered "Yes, ma'am." (*Id.* at 372.) The Court asked Watkins if what the Task Force Officer said was in any way incorrect, and Watkins answered, "No, ma'am." (*Id.*)

The Court then asked Watkins again if he was offering to plead guilty to these two charges because he was in fact guilty of these charges, and Watkins responded, "Yes, ma'am." (*Id.* at PageID 372–73.) The Court asked Watkins one final time how he would like to plead in

light of everything that was said in open court, and Watkins responded, "Guilty." (*Id.* at PageID 373.) The Court ultimately concluded that—after observing Watkins' appearance and responsiveness—the plea was knowing and voluntary and supported by an independent basis in fact. (*Id.*)

From September 7, 2017 through October 27, 2017, the Court did not hear from Watkins even though Watkins obviously knew how to file a motion or letter. (*See* Docs. 92 through 104.) In October, November, and early December, Watkins' attorneys filed Motions to Extend Deadlines for Objections to the Initial Presentence Investigation Report, which the Court granted. (Docs. 113, 116, 117, 119, 128.)

On December 14, 2017, the Court received a *pro se* "Letter" from Watkins that the Court construed as a Motion to Withdraw his Guilty Plea. (Doc. 120.) In it, Watkins contends that he should be entitled to withdraw his guilty plea because—during his nine and one half month stay in solitary confinement—he was unable to properly access the law library or communicate with his family effectively to prepare his defense or make proper legal decisions. (*Id.* at PageID 390.) He further alleges that his isolation "caused me a lot of stress, and duress giving counsel the opportunity to [] represent me ineffectively." (*Id.* at PageID 391.)

After conducting a brief hearing regarding the *pro se* Letter/Motion, the Court granted Watkins' attorneys' Motions to Withdraw as Counsel and appointed new counsel for him. (Minute Entry dated January 5, 2018.) Meanwhile, Watkins continued to write to the Court directly. (Docs. 123, 124, 125.) On February 8, 2018, Watkins' attorney filed a Motion to Determine Competency and/or Present Mental Condition of Defendant. (Doc. 129.) In that Motion, defense Counsel stated that Watkins desired mental health testing and stated that Watkins "has exhibited odd thought processes, such as hyper-rationalization of his actions,

5

inconsistent decision making, grandiose projections of his ability to overcome obstacles, occasional omission of undisputed facts while making analysis, and 'tunnel vision' which prevents a review of an entire set of facts." (Doc. 129 at PageID 479–80.) The Court granted the Motion and sent Watkins to another jurisdiction for a full competency evaluation. (Doc. 130.) On June 13, 2018, the examining forensic psychologist filed a lengthy report concluding that Watkins is competent and able to make decisions concerning his legal strategy. (Doc. 132.)

The Court conducted a status hearing as a result of the competency report at which the defense requested that a new attorney be substituted as Watkins' fifth attorney. The Court granted the motion to substitute counsel and scheduled another status conference after newly-appointed counsel conferred with Watkins. (Doc. 133.) At the July 9, 2018 status conference, Watkins' latest attorney indicated that Watkins would like to proceed with his attempt to withdraw his guilty plea and requested time in which to prepare and file a formal motion. The Court granted defense counsel's request, and the Second Motion to Withdraw Plea of Guilty (Doc. 134) is now ripe for decision.

Watkins—through counsel—alleges that during the nine and one-half months he spent in solitary confinement[2] and then on suicide watch his "mental and physical health suffered and deteriorated greatly." (Doc. 134 at PageID 518.) He claims that he only entered the guilty plea "because he was literally losing his mind in the prolonged solitary confinement and he was told that the only way he could be released was to enter the guilty plea." (Doc. 134 at PageID 519.) He fails to identify the person or persons who told him so or the situation in which such statement was made.

---

[2] Watkins was moved to solitary confinement in December 2016, after the Government intercepted letters allegedly seeking a witness' murder. (Doc. 136 at PageID 538.)

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw a guilty plea after the court accepts the plea, but before it imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." "It is well-established that '[a] defendant has no right to withdraw his guilty plea.'" *United States v. Robinson*, ___ F. App'x ___, 2018 WL 2027026 at *5 (6th Cir. May 1, 2018), *cert. pet. docketed* July 6, 2018 (quoting *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012)). "[T]he aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (citation and internal quotation marks omitted)). To determine whether a defendant has made the requisite showing, courts in this circuit weigh the following non-exhaustive factors from *United States v. Bashara*:

> (1) The amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000)); *Robinson*, 2018 WL 2027026 at *5; *United States v. Buford*, 627 F. App'x 518, 521 (6th Cir. 2015). "The relevance of each

7

factor will vary according to the 'circumstances surrounding the original entrance of the plea as well as the motion to withdraw.'" *United States v. Dalalli*, 651 F. App'x 389, 400 (6th Cir. 2016) (quoting *Haygood*, 549 F.3d at 1052).

### III. ANALYSIS

In determining whether Watkins can show a fair and just reason for requesting the withdrawal, the Court will examine each factor in order.

#### A. Time Elapsed Between the Plea and the Motion to Withdraw

Watkins entered his guilty plea on Thursday, September 7, 2017. (Doc. 108.) The Court received the Letter that the Court interpreted as a *pro se* Motion to Withdraw Plea of Guilty on December 14, 2017. (Doc. 120.) Thus, 98 days elapsed between his guilty plea and his Letter/Motion. Courts properly have denied withdrawal motions based on the same or shorter delays. *See, e.g., Buford*, 627 F. App'x at 522 (98-day delay); *United States v. Cinnamon*, 112 F. App'x 415, 418–19 (6th Cir. 2004) (90-day delay); *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (77-day delay); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67-day delay); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55-day delay); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (35-day delay). Thus, the 98-day delay between Watkins' plea and Letter/Motion seeking withdrawal weighs against permitting withdrawal at this juncture.

#### B. Reason for Failing to Move for Withdrawal Earlier

Watkins contends that he drafted the Letter/Motion on October 12, 2017, but he did not want to mail it until he visited with Counsel, thereby justifying his failure to seek timely withdrawal. (Doc. 134 at PageID 521.) This contention is unpersuasive for three reasons. First, while the Letter is notarized October 12, 2017, the fact remains that the Court did not receive it

8

until December 14, 2017–98 days after Watkins entered his guilty plea. (*See* Doc. 120 at PageID 390.) Watkins has had no problem communicating with the Court, even when he was in solitary confinement, so the delay here lacks explanation. (*See* Docs. 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104.) Second, the October 12, 2017 timing is curious because it happens to be the day the Initial Presentence Investigation Report ("PSR") was forwarded to Watkins' Counsel. (Doc. 110.) "Defendants are not permitted to plead guilty and then use their PSR to their advantage in seeking to withdraw a guilty plea." *Dalalli*, 651 F. App'x at 401 (citing *United States v. Poole*, 2 F. App'x 433, 438 (6th Cir. 2001) (district court properly denied the defendant's motion to withdraw his guilty plea in part "because courts more closely scrutinize motions to withdraw guilty pleas which follow significant delays and *potential review of presentence reports.*")) Finally, in his Letter/Motion to Withdraw Guilty Plea, Watkins complains at length about his counsel's perceived failings. (*See* Doc. 120 at PageID 391–93). If Watkins found his counsel so lacking, it makes no sense to delay sending his Letter/Motion to the Court for more than two additional months so that he could meet with Counsel before filing. Thus, Watkins' stated reason for delay strains credulity and weighs against permitting him to withdraw his guilty plea.

## C. Whether Watkins Maintained his Innocence

In the brief filed by his newest attorney, it states, without further elaboration or comment, "Mr. Watkins before, during and immediately after entering the guilty plea maintained and maintains his innocence to the indictment." (Doc. 134 at PageID 522.) While Watkins may have raised technical challenges or claimed that the indictment was exaggerated, he does not maintain his innocence either before, during or after he changed his plea.

9

Before the guilty plea, Watkins sent to the Court for filing 13 letters or motions *pro se*. In his first filing, Watkins alleges that the indictment "suffers from false information, misrepresentation, variance, defects in charges" which prejudice his rights because the indictment mentions fentanyl, heroin and carfentanil, but the lab reports and controlled buys only detect heroin and carfentanil. (Doc. 92 at PageID 293.) He further alleges that the indictment confuses "Victim One" with "Victim Two" as far as which one died from the overdose and which one merely suffered serious bodily injury. (*Id.* at PageID 294.) He even contends that Count Eight of the indictment alleges possession when it should really allege distribution, and he asks the Court to amend the indictment accordingly. (*Id.*) However, at no point in any of his 13 motions or letters does he allege that he is an innocent man. (*See* Docs. 92–104 at PageID 293–320.)

Immediately before the plea hearing, Watkins—accompanied by two experienced criminal attorneys—signed a Statement of Facts specifically acknowledging, "I have read the statement of facts and have carefully reviewed it with my attorney. I acknowledge that it is true and correct." (Doc. 107 at PageID 334.) The Statement of Facts states, in part, that he sold heroin and carfentanil to Victim 2 who overdosed, lost consciousness, and "suffered the failure of her respiratory system prior to revival by medical professionals." (*Id.*) The Statement of Facts further declares, "**WATKINS** planned and attempted to murder Victim-2 because **WATKINS** believed Victim-2 was going to testify against him in his narcotics case, 1:16-CR-089." (*Id.*) It goes on to detail how Watkins prepared letters to at least five associates outside the jail in which he provided detailed information about Victim-2 (including her name and address), attempted to evade law enforcement by having another inmate distribute the letters, and

10

"directed the intermediary in part on the phone, where he used the PIN numbers of other inmates to avoid detection." (*Id.*)

At the change of plea hearing, the Court asked Watkins a lengthy series of questions to ensure that his change of plea was being made knowingly and voluntarily. The Court advised Watkins of each of the charges, asked him individually if he wanted to plead guilty to each charge, and each time he responded, "Yes, ma'am." (Doc. 115 at PageID 354.) The Court then asked him—again separately as to each charge—how he would like to plead, and each time he responded, "Guilty." (*Id.* at PageID 354-55.) Court personnel then swore Watkins in, and under oath this time Watkins—after being informed of the constitutional rights he would surrender by pleading guilty and the maximum penalties to which he could be sentenced—again indicated that he would like to plead guilty.

A Task Force Officer read the allegations against Watkins in open court, including that Watkins and his co-defendant sold "Victim Two" controlled substances which resulted in Victim Two's drug overdose and loss of consciousness and failure of respiratory system until revival by emergency medical personnel and that "Watkins planned and attempted to murder Victim Two because Watkins believed Victim Two was going to testify against him in the narcotics case." (*Id.* at PageID 371–72.) The Court asked Watkins if what the Task Force Officer said was correct, and Watkins answered "Yes, ma'am." (*Id.* at 372.) The Court asked Watkins if what the Task Force Officer said was in any way incorrect, and Watkins answered, "No, ma'am." (*Id.*) The Court asked Watkins again if he was offering to plead guilty to these two charges because he was in fact guilty of these charges, and Watkins responded, "Yes, ma'am." (*Id.* at PageID 372–73.) The Court then asked Watkins one final time how he would like to plead in this case in light of everything that was said in open court, and Watkins responded, "Guilty." (*Id.* at PageID 373.)

At no time during the change of plea hearing did Watkins hesitate, act as though he was unsure, or indicate verbally or in any other way that he was not guilty of the charges to which he was pleading guilty.

More than three months after the change of plea hearing, the Court received Watkins' *pro se* Letter/Motion to Withdraw Guilty Plea. (Doc. 120.) In it, Watkins contends that the witness tampering allegations are "untrue and exaggerated," that the penalty enhancement provision of the Controlled Substance Act for death or serious bodily injury should not apply in his case because the "but-for cause of death or injury" lacks evidence here, and that a Section 851 sentencing enhancement applies only to "major drug offenders, not low level dealers with low level drug priors." (*Id.* at 390–92.) He does not at any time state that he is innocent of the charges to which he pled guilty.

A week after the Court received Watkins' *pro se* Letter/Motion to Withdraw Guilty Plea, the Court received three more documents from Watkins. (Docs. 123–125.) In those letters, Watkins claimed that the informant is unreliable, that prosecutors "exaggerated" charges against him to force a plea, and that there is insufficient evidence on the murder for hire aspect of the witness tampering charge. (Doc. 123 at PageID 399.) Watkins also expressed his belief that "had the Prosecutors not err[ed] by not blacking out CS16-11 name on EMS medical papers given to defendant in discovery a month after being arrested, that defendant would have never had the opportunity to 'attempt' to give anyone info." (*Id.* at PageID 400.) In his final *pro se* letter to the Court, Watkins apologizes to the Court and his family for "the allegations that are true" before alleging that the other allegations against him "are fabricated, and there is insufficient evidence to convict defendant on the charges." (Doc. 125 at PageID 415.)

12

These are far from the "vigorous and repeated protestations of innocence" necessary to support the withdrawal of a guilty plea. *Dalalli*, 651 F. App'x at 402 (quoting *Baez*, 87 F.3d at 808-09); *see also Buford*, 627 F. App'x at 521. Rather, Watkins has not maintained his innocence, and this factor weighs heavily against his withdrawal request.

### D. Circumstances Underlying the Plea

Watkins' counsel contends—without citation—that Watkins entered a guilty plea "because he desperately wanted to be released from solitary confinement and he was assured that if he entered the guilty plea he would immediately be released from his 23 hour a day, 9 ½ month solitary confinement in isolation." (Doc. 134 at PageID 522.) While the Court acknowledges the difficulties an inmate may face in solitary confinement, counsel's assertion is in direct conflict with Watkins' own statements at the plea hearing.

"A defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements." *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007) (quoting *Cinnamon,* 112 F. App'x at 419 (alteration in original)). At the plea hearing, Watkins repeatedly acknowledged that he was pleading guilty of his own free will and because he was in fact guilty of the two charges to which he pled. (*See* Doc. 115.) The Court specifically asked Watkins in open court, "Has anyone made any promise or assurance that is not in the plea agreement to persuade you to accept this [plea]?" to which Watkins responded under oath, "No, ma'am." (*Id.* at PageID 370.) Thus, this factor, too, weighs against allowing withdrawal in this case.

13

### E. Defendant's Nature and Background

Watkins has completed the twelfth grade, and—as demonstrated by the numerous *pro se* letters and motions in the record—he is a very capable reader and writer. During the entire Rule 11 colloquy, Watkins appeared lucid, competent and attentive. When the Court asked his attorneys if they had any reason to doubt his competence to change his plea, one of his attorneys responded, "Judge, in interaction with our client over the last two months, I've found him to be extremely lucid. He understands what's going on, and I have no doubt that he's competent." (Doc. 115 at PageID 356.)

Watkins' current counsel points to the fact that the Court ordered a competency evaluation in February of 2018 as evidence that Watkins' mental health was in question as a result of his time in solitary and, thus, at the change of plea hearing in September of 2017. (Doc. 134 at PageID 552.) However, the Court ordered the competency evaluation only after Watkins' fourth attorney expressed concern that Watkins' desire and efforts to withdraw his guilty plea would result in a higher sentence for his client, stating:

> Current counsel has found Mr. Watkins to be thoughtful, and he communicates well. Yet, Mr. Watkins has exhibited odd thought processes, such as hyper-rationalization of his actions, inconsistent decision making, grandiose projections of his ability to overcome obstacles, occasional omission of undisputed facts while making analysis, and "tunnel vision" which prevents a review of an entire set of facts. The initial Presentence Report, which may not yet have found its way to the Court, outlines a history of inappropriate and inconsistent decision making dating from childhood, along with a history of substance abuse which may well be a symptom of self-medicating for psychological purposes.

(Doc. 129 at PageID 480.) The Court granted the defense motion (even though it was filed well beyond the deadline established by 18 U.S.C. § 4244) and sent Watkins to another jurisdiction for evaluation. The evaluators found that Watkins "possesses a rational and factual

understanding of the proceedings against him, has the capacity to assist legal counsel in his defense, and can adequately make decisions regarding his legal strategy," and "does not present with a mental defect." (Doc. 132 at PageID 514.) Thus, this factor also weighs against withdrawal in this case.

**F. Defendant's Prior Contact with the Criminal Justice System**

The parties agree that Watkins has significant prior contacts with the criminal justice system, including a prior felony drug trafficking conviction. (Doc. 106 at PageID 326; Doc. 134 at PageID 523; Doc. 136 at PageID 539.) Watkins' *pro se* motions and letters also demonstrate a relatively high level of sophistication regarding the judicial system. Accordingly, this factor, too, weighs against withdrawal in this case.

**G. Prejudice to the Government**

While defense Counsel contends—without support—that the Government will not be prejudiced by allowing Watkins to withdraw his guilty plea, the Court disagrees. The original drug-related activities charged in Case 1:16-cr-89 occurred in August and September of 2016. The confidential source/witness with whom Watkins pled guilty to tampering had already overdosed at least once at that time, according to the indictments in this case. There is an extremely high risk that necessary witnesses may no longer be available now that two years have passed since the criminal activities occurred. In addition, memories fade, and Watkins has already admitted to attempting to influence a witness' availability. Thus, this factor also weighs against allowing Watkins to withdraw his guilty plea.

"[M]ore to the point, '[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion of setting aside a guilty plea should seldom arise.'" *Robinson*, 2018 WL 2027026 at *7 (quoting *United States v.*

*Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (citation omitted)). This case does not present one of those rare circumstances.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Second Motion to Withdraw Plea of Guilty (Doc. 134 in Case 1:16-cr-89 and Doc. 48 in Case 1:17-cr-38) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated: 8/22/18       S/Susan J. Dlott
                     Judge Susan J. Dlott
                     United States District Court